Good morning, your honors. May it please the court, my name is Chris McLean. I'm an assistant United States attorney from Missoula, Montana. The government in this case is appealing Judge Malloy's order suppressing evidence found during the warrantless search of Mr. Smoker's automobile. We're appealing this because Judge Malloy committed clear error in finding that this routine traffic stop and arrest created a coercive environment that he ruled made Mr. Smoker's consent to search the car involuntary. We rely primarily on the United States Supreme Court case in United States v. Watson for our position that Judge Malloy clearly erred in this case. That is because in Watson the Supreme Court determined that mere... Counsel, you say clear error, and there's some language in his order about the totality. But I read his order to say that without that express warning to the defendant that he had the right to deny consent to search, that that was critical to his suppression of the evidence. I agree, your honor. That to me is a question of law. I agree. I agree completely. And in fact, he did rule that the fact that Smoker was handcuffed under arrest and placed in the back of a patrol car created a coercive environment. At least in this situation and under these facts, Smoker was entitled to be informed that he was not required to consent to a search. And I think that is... Wasn't he also in handcuffs when he was in the back seat? Yes, he is. And hadn't the officer taken his, I think it was his driver's license and registration? I'm sure he had initially at the window of the automobile, yes. He was working on identifying all those persons in the car. Actually, he was very concerned about who they were, apparently. He was. When Judge Malloy, as you just read, said under these circumstances, something like the government was required to tell him about his right not to consent. Right. Is that a finding, finding the fact? I think it was a legal ruling. He said under these facts, the government was required, the police were required to advise him of his right to refuse consent. And I think he's making a legal ruling at that point. Now, that requirement is almost the other side or maybe just a corollary to one of the other factors about, well, whether or not that person was told, you know, we could go out and we could go out and apply for a search warrant. Right. I think so. And of course, those are pretty close factors. And in this case, Smoker wasn't told that. Right. He was not told we're going to go get a warrant. He wasn't. They didn't threaten him saying we can go. And then Judge Malloy relied on I forgot the name of the case, but some case that said under the circumstances of that case, he should have been told that. Right. I think so. But, you know, as I read our cases on that factor, they aren't very well, you know, which they don't make a whole lot of sense to me. Sometimes they say that that factor goes in favor of the you know, of the government. Sometimes it goes against the government. It's hard to tell, you know, when, when, when you should put it into which column. And here, Judge Malloy says, well, that's another thing that he should have been told. Right. He did. He put that in the same paragraph with his ruling I've already stated. He said, Hartzell, that's the deputy, did not tell Smoker that he could refuse consent or require the officers to obtain the search warrant. And we've argued in our briefs that the point of that fifth factor, whether the defendant was told a search warrant could be obtained, really is to prevent the law enforcement officers from threatening the defendant, the suspect with a search warrant saying, you know, if you don't give us consent, we're going to get a search warrant anyway, or wrongfully stating to the suspect, we've got probable cause, we're going to go get a search warrant. It would be cruel to deny. That's the way I've always understood. That's me, too. Or you could say, well, look, you might as well give us consent, because if you don't, we'll get a search warrant. That's right. Well, I just have to stand around for a couple hours while we do that. Something like that. But then you come across these cases that say, you know, the whole the opposite. And so it's very I say, Frank, it's very hard to reconcile those cases. And that's I guess, you know, I don't blame Judge Malloy for depending on that because the cases are there, but I don't know what to make of it. Well, I think we've got this one case in the Ninth Circuit, Torres Sanchez, where this court implied that an officer must warn a suspect of a right to require a warrant. And it was almost the last paragraph of that ruling. And it's just kind of thrown out there and not really relied upon in the case for the decision. But there are other cases that I think more clearly state, Judge Tashima, the position that you were setting forth, that you always understood it was a protection for the suspect, that the officers couldn't threaten him. And that's the Kim case that we've cited in our brief that this court decided in 94. And it says officers cannot intimate that withholding consent is futile because a warrant could be obtained anyway. We've also cited this court to the Cormier case, the 2000 case, where it talks about this fifth factor depends on whether the search warrant or the officers explain the possibility of a search warrant in a threatening manner. And then lastly, that Murillo case from this court in 2001, where the court held the fifth factor was sufficient to establish voluntariness when the officer did not claim to have a search warrant or ability to obtain one. That's the case here, really. Deputy Hartsville never claimed to have a search warrant, didn't threaten to get a search warrant. And that's why it's our position that three of the five voluntariness factors militate in favor of the government's position in this case, that the consent was voluntary. No guns were drawn. Smoker was Mirandized by the officer. No, there was no implication that a search warrant could be obtained. The only factors that this court looks at which might show involuntariness are the fact that he was in custody and that he was not told he had a right not to consent to the search. And the Watson case and Kim and this Noah, N-O-A case are precedent for our position that, in fact, the consent was voluntary. I'd be happy to answer any more questions. I'd like to reserve some time for rebuttal. I think you should reserve. All right. That's fine. Thank you, Mr. Chief. Thank you. Good morning. May it please the Court. My name is Melissa Harrison. I am a professor of law at the University of Montana School of Law. I am on leave, temporarily serving as an assistant federal defender in the District of Montana. Well, good for you. You can start off by answering Judge Riebley's question, you know, which bothers me, too. Was that statement, I'll call it, that Judge Malloy made, was that a finding of fact, or was it deciding a question of law? Your Honor, I did want to start by considering Judge Riebley's question. Judge Malloy did not rule, in contrast to what the government asserts, that the right to refuse consent is determinative of the question of voluntariness. By contrast, he states in his order that it is a totality-of-the-circumstances approach and that all relevant factors must be considered. He then goes on to consider those factual questions. And I believe the right to refuse consent in his order is a factual determination, which means that his decision is viewed in a clearly — for — under a clearly erroneous standard. Because he did go through all of the factors listed in this Court's Ninth Circuit — in this Court's jurisprudence on whether consent is voluntary. In fact, he expressly says no one factor is dispositive. And so it's simply incorrect that the fact that Mr. Smoker was not told he had a right to consent was the basis of the Court's ruling. If — although in a situation where a suspect is under arrest, this Court's jurisprudence and also the U.S. Supreme Court's in Mendenhall indicates that the — being told of the right to refuse consent is especially important in a situation where the suspect is under arrest. And Judge Malloy's order, I believe, quite correctly — and this is in the record at — our excerpts of record, page 120 — 119 and 120 — that there's a distinction between cases in which the suspect is under arrest and in custody and those where the suspect is not. And I cannot find in my research a case where it's not — where factually you have both custody and not being told the right to refuse consent where it's voluntary. Those cases where this Court has said that the right to refuse consent doesn't mean it's not voluntary are cases where the suspect was not in custody. In cases where the suspect is in custody, the suspect was told of the right to refuse consent. Judge Malloy cites in his order the Childs case, the Perez case, and the Castillo case. In addition to that, we cited, I believe, it's the Reed case in our decision as well, and the — and also Childs. And so — so what we have is — was Judge Malloy's ruling that all of the circumstances listed in Torres-Sanchez go in favor of the defendant clearly erroneous? And I submit, Your Honor, that it is not, Your Honors. If you look at those factors, first, whether the defendant was in custody, he certainly was, and that goes toward the defendant. Whether the arresting officer had his gun drawn, he did not at that point. Now, you know, the defendant was in the back of the patrol car at that point, handcuffed. But he did not have his gun drawn. Whether Miranda warnings had been given, the warnings were read. We argued at the suppression hearing that those warnings were insufficient. They did not — Mr. Smoker was not told in the Miranda warnings that he had the right to cease questioning at any time. So that goes toward the defendant. The fourth, whether the defendant was told he had a right not to consent, he clearly was not. And the fifth factor, whether the defendant was told a search warrant could be obtained. And, Judge Toshima, I agree with you respectfully that the Court's jurisprudence on the fifth factor has not been exactly consistent. I do agree with you also, however, that Judge Molloy cannot be faulted for relying on Torres-Sanchez because it does hold that, and the later cases have not overruled Torres-Sanchez. You have Kim, which states the opposite, and then Cormier, which recognizes the problem and resolves it by saying that it would depend on the facts of each case. And I would agree that the fifth factor in this case couldn't possibly be determinative given, first, the state of the law, and, second, quite frankly, I don't think they could have gotten a search warrant in this case. There was no probable cause to search the van at this point. And that may, I think that might help the defendant in this case because, in fact, if they told them that they, as I think it was in the Cormier case itself, well, we could try to get a warrant, but we're not sure if we could get one, that would have had to have been the situation here because they couldn't have gotten one because there was no probable cause. So it certainly would have been to the defendant's benefit if the officer had said we couldn't get a search warrant and so you should give us consent. But I'm not arguing that that's required. I don't think it is. But I would certainly say that given the other four factors, three of them are in favor of the defendant here. And the district court ruled in favor of the defendant, and given its reliance on Torres-Sanchez, which is good law, it's hard for me to understand how that ruling could be clearly erroneous. If there are further questions, I would be happy to answer them. Otherwise, I won't take up your time. Roberts. Thank you, Ms. Harrison. Thank you. Your Honors, I don't agree with Ms. Harrison that Judge Malloy examined all the factors. I think he relied on two of them, and I think that was the problem with his ruling. He may have even added a sixth factor when he asserted that the officers should have told Mr. Smoker that he could require them to get a search warrant. That was also in his ruling, and that's something that is an additional consideration that he gave in finding the consent involuntary that we don't think was legally appropriate. The defendant in this case completely ignores the NOAA decision from this court back in 1971, and I don't know if I addressed it sufficiently enough, at least in this case. In this case, the suspect is given Miranda rights, appropriately by the law enforcement officer, that obviates the need for additional notification of his right to refuse consent. And, of course, Deputy Hartzell gave the Miranda warnings here, and Judge Malloy did not consider this NOAA case either, I don't think, in ruling the consent involuntary. We think it should append to this case. Finally, Ms. Harrison has argued that the warnings were insufficient, and the warnings are clearly stated in the transcript, and they clearly meet the Miranda requirements. It's for these reasons, Your Honors, that the government respectfully requests this Court reverse Judge Malloy's order suppressing the evidence in this case. Thank you very much. All right. Thank you, Mr. McClain. We thank both counsel. This case is now submitted for decision.
judges: Reavley , Tashima, Paez